## Hughes v. Marvin, Banking Commissioner.

(Decided October 22, 1926.)

### Appeal from Boyle Circuit Court.

1. Banks and Banking—Constitutional Law.—Kentucky Statutes, section 547a, providing that trustee of insolvent bank, under order of court, may enforce stockholders' liability under section 547, held not void as ex post facto.

2. Constitutional Law—Statute Allowing Trustee of Insolvent Bank to Enforce Stockholder's Liability Previously Enforceable Only by Creditors, Held Not to Impair Stockholder's Contract (Kentucky Statutes, Sections 165a-17, 547, 547a, 573).—Kentucky Statutes, section 547a, providing that any trustee, etc., having for settlement estate of insolvent bank, etc., under court of competent jurisdic-

tion, may enforce stockholder's liability under section 547, held not to impair obligation of stockholder's contract because liability previously could be enforced only by creditors; procedure in actions on contract being within control of state, in view of sections 165a-17 and 573.

3. Statutes.—Kentucky Statutes, section 547a, is not amendatory of section 547, and hence is not void under Constitution, section 51, requiring a statute to be re-enacted on amendment.

4. Banks and Banking—Banking Commissioner, Liquidating Bank Under Authority of Board of Directors, is Proper Party to Enforce Stockholder's Liability Rather than Deputy in Active Charge (Kentucky Statutes, Sections 547, 547a).—Banking Commissioner, in charge of liquidation of bank under authority of board of directors, is proper party, under Kentucky Statutes, section 547a, to enforce stockholder's liability under section 547, rather than deputy in active charge; liability being special fund for benefit of creditors.

5. Banks and Banking.—Statute providing that trustee of insolvent bank might enforce liability imposed by statute applies to bank in liquidation when enacted (Kentucky Statutes, sections 547, 547a).

6. Banks and Banking.—All bank shareholders need not be joined in action, under Kentucky Statutes, section 547a, to enforce their liability under section 547.

7. Banks and Banking.—Action under Kentucky Statutes, section 547a, to enforce stockholder's liability under section 547, may be brought as an independent action rather than in the general proceedings for settling the affairs of the insolvent bank.

8. Banks and Banking.—Kentucky Statutes, section 547, does not require notice to stockholder of application of banking commissioner, in charge of insolvent bank, for authority to enforce double liability.

9. Banks and Banking.—Bank's shareholder, who filed claim against bank and was party to liquidation proceedings at time of application of banking commissioner for authority to enforce stockholder's liability, might not complain of absence of notice of application.

10. Banks and Banking.—Judgment declaring bank's insolvency and necessity to enforce stockholder's liability is conclusive in absence of fraud, and may not be collaterally attacked.

11. Banks and Banking.—Determination of bank's insolvency, indebtedness, liabilities, and amount of stockholder's assessment in receivership proceedings is conclusive on collateral attack.

12. Banks and Banking.—Stockholder cannot set off against stock liability, under Kentucky Statutes, section 547, a claim against insolvent bank.

E. V. PURYEAR for appellant.

NELSON D. RODES for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Lizzie C. Hughes, whom we will refer to as the defendant, is seeking to reverse a judgment for $750.00 obtained against her by the appellee, whom we will refer to as the banking commissioner. The defendant was the owner of fifteen shares of the capital stock of the People's Bank & Trust Company of Perryville, which corporation was engaged in the banking business until October 2, 1922, when it failed. At the time of its failure the board of directors placed the affairs of the bank in the hands of the banking commissioner for liquidation, and that liquidation has not yet been entirely completed. The banking commissioner filed in the Boyle circuit court a detailed report of the condition of the bank at the time he took charge of its affairs, and at each subsequent term of that court the commissioner has made written reports to the court of the progress made in the liquidation of the bank. and has obtained the advice and direction of the court from time to time, as required by section 165a-17 of the Kentucky Statutes. At the outset, the banking commissioner published the statutory notice to creditors to prove and present their claims, and this defendant, Lizzie C. Hughes, filed in that action her claim as a creditor. Her claim was for $39.80 which she claimed to have had on deposit in this bank at the time of its failure, and for $1,550.00 for United States government bonds which she had deposited with the bank for safe-keeping, and which she claims were converted by the bank.

On September 8, 1924, the banking commissioner filed, in that proceeding, a pleading alleging therein that it was necessary to collect the full double liability from all of the shareholders of this bank, in order to pay the claims of its creditors, and that even this would not pay the debts of the bank in full, and asked that the court order the banking commissioner to proceed to collect the double liability from the shareholders. The defendant, having proved her claim, became a party to this proceeding in the circuit court. We do not know whether or not she entered any objections to the request of the commissioner for authority to collect the double liability from the shareholders, but it is stated in brief and not denied, that certain shareholders did appear and did object.

The record shows that the court overruled such objections and made the order requested by the commissioner. It is further stated in the brief, and not denied, that a number of shareholders have paid their double liability.

On October 16, 1924, the banking commissioner began this suit against defendant. She first filed a special demurrer to the petition, then a general demurrer, each of which the court overruled. She then filed an answer consisting of two paragraphs. In the first paragraph she raised many questions which we shall discuss later, and in the second paragraph she plead as a set-off the liability of the bank to her upon the claims above mentioned. The banking commissioner filed a demurrer to the set-off which was sustained. He filed a reply to the first paragraph of the defendant's answer, to which reply the defendant filed a demurrer. That demurrer was overruled. The court gave judgment against her.

The authority of the banking commissioner to maintain this suit against the defendant is based upon the order of court directing him so to do, and upon an act approved March 28, 1924, which is chapter 11 of the Acts of the General Assembly for that year, and which will be found at page 16 of those Acts, and which is now section 547a of our statutes.

The contention of the defendant is that the act of 1924 is void because it impairs the obligations of a contract and is an *ex post facto* law. In the case of Henly, etc. v. Myers, etc., 215 U. S. 373, 30 Sup. Ct. 148, 54 L. Ed. 240, the Supreme Court of the United States said:

> "Equally without merit is the contention that the statute of 1899 impaired the obligations of the stockholders' contract, in that it substituted for individual actions against them a suit in equity by a receiver appointed after judgment against the corporation. In becoming stockholders, the defendants did not acquire a vested right in any particular mode of procedure adopted for the purpose of enforcing their liability as stockholders. It is a well established doctrine that mere methods of procedure in actions on contract, that do not affect the substantial rights of the parties, are always within the control of the state. It is to be assumed that parties make their contracts with reference to the existence of such power in the state."

That authority is a complete answer to defendant's main contention.

Her next contention is that the act of 1924 is void because of section 51 of our Constitution. She is making this contention because it is her conception of the act of 1924 that it is an amendment to section 547 of the statutes; but in that she is mistaken, as this act does not amend or change in any way her liability as a stockholder under section 547. It merely provides the way in which that liability shall be enforced. It is a new law. The defendant did not, in becoming a stockholder in this bank, acquire a vested right in any particular mode of procedure that might be adopted for the purpose of enforcing that liability.

After the decision in the Dartmouth College Case the various states of this Union became alarmed, and to meet just such cases as this one, statutes were passed by the legislatures of the various states reserving the right to amend and change charters granted to corporations, and our General Assembly, in 1856, passed what is now section 1987 of our statutes, and when our present Constitution was adopted it was provided in that instrument: "Every grant of a franchise, privilege or exemption shall remain subject to revocation, alteration or amendment."

The Nall & Williams Tobacco Company was a corporation and by its charter no double liability was imposed on the stockholders. Thereafter the law was amended so as to impose a double liability on stockholders. It was insisted that this amendment applied to the charter of this tobacco company by virtue of section 573 of the statutes. Williams sought to dissolve the tobacco company because he was unwilling to be responsible under the double liability provision, and in the case of Williams v. Nall, 108 Ky. 21, 55 S. W. 706, this court upheld section 547 and section 573 of the statutes, and certainly if a stockholder can have imposed upon him a double liability where only a single liability previously existed, a stockholder can not complain of the act of 1924, which merely changes the method by which her liability already existing is enforced. She contends that this act has imposed upon her an added burden in this, that before the passage of this act, this double liability could only be enforced by some creditor of the bank, and that unless a creditor sued and sought to enforce it,

she would not have had to pay anything on her double liability.

Shortly after this bank was placed in liquidation, Mr. R. G. Wilmot, deputy banking commissioner, was placed in charge of its affairs, and the defendant is now contending that the banking commissioner has no authority to institute this suit, but that if it is to be instituted at all, it should have been instituted by Mr. Wilmot, the man who is actively in charge of the bank's affairs; but that is because she misunderstands the nature of her double liability. Mr. Wilmot has charge of the assets of the bank. The fund arising under this double liability is not and never will be an asset of this bank. This will be a special fund for the benefit of creditors. "This cause of action does not belong to the bank, never was the property of the bank, and was one that the bank could not enforce." Van Tuyl v. Sullivan, 156 N. Y. S. 309. What we have quoted above was said in an action just like this one, and it applies here. The law requires that the banking commissioner execute bond when he is appointed by the governor. The statute names the commissioner and not his deputy as the person in charge of the enforcement of the shareholders' liability, and the commissioner and not his deputy was the proper party to institute this suit. She also contends that as this bank was insolvent and in process of liquidation, the act of 1924 did not apply, but in the case of Hanson State Bank Examiner v. Soderberg, 105 Wash. 255, 177 P. 827, we find this:

"Since the assessment in the present case was made under the 1915 act and the bank was in process of liquidation when the 1917 act took effect, it is the appellant's claim that the latter act can in no event be held applicable here. These statutes bear upon the remedy only. The liability of the stockholders remains the same as it was prior to their passage.

"In Morse on Banks and Banking (5th ed.) vol. 2, sec. 677, it is said: 'Thus where, at the time of the insolvency, the only remedy against the shareholders was by proceedings in equity on the part of the billholders, and subsequently, pending the liquidation of the affairs of the bank, a new statute was passed creating the machinery of the bank commissioners and providing a simple and expeditious means whereby they could enforce collection from

shareholders (the amount of actual liability not, of course, being varied), it was held that the shareholders in the already insolvent bank could not object to the application of this new statute to their own case. It bore upon the remedy only, not upon the liability.' "

That is a complete answer to her contention. Another case of exactly the same kind, and with a similar ruling is Springhorn v. Dirks, 72 Mont. 121, 231 P. 912. Authority to the same effect will be found in vol. 12, C. J., p. 677.

Defendant insists that there was a defect of parties and that all the shareholders should have been made parties to this action. The liability of shareholders is a ratable liability, based on the amount of the debts that will not be paid by the assets of the bank, and the liability of any shareholder is not dependent upon the collection from other shareholders of their liability. So far as we can tell from this record, the defendant may be the only shareholder who has not obeyed the order of the court and paid to the banking commissioner this double liability, and we can see no reason that a shareholder should be sued when he is ready and willing to pay. Some of these shareholders may be nonresidents that could not be brought before the court. The act does not limit the commissioner to a single suit.

She is next contending that this should not have been brought as an independent action, but should have been brought in the general proceeding pending in the Boyle circuit court for the settlement of the affairs of this bank; but we can not see how that can affect her situation, and there is no merit in that contention.

She insists that the order directing the banking commissioner to institute this suit was void because the shareholders were not given notice of his application for authority to enforce the double liability. The statute does not require a notice to be given, and the defendant is not in a position to complain, as she had filed her claim and was a party to this action at the time.

In Lynch v. Jacobsen, 55 Utah 129, 184 P. 929, we find this:

"Unless the statute . . . provides a different rule, the order or judgment of the court declaring the

bank insolvent and adjudging that it is necessary to enforce the stockholders' additional liability to pay the bank's debts, in the absence of fraud or collusion, is conclusive upon the stockholders and they may not assail the same except in a direct proceeding.''

That ruling is sound and we approve it.

She is next contending that the petition filed against her was defective because it did not show the condition of the bank, and give facts which might establish the necessity of the enforcement of the double liability. The defendant was a party to the original proceeding for the settlement of this bank's affairs. She could, by an examination of those papers, have ascertained everything she might want to know about its condition, and we are persuaded that the following statement from the case of Springhorn v. Dirks, *supra,* is sound:

> "As to the insolvency of the bank, its indebtedness, liabilities and the amount of the assessment, all were determined in the receivership proceedings, and, since no appeal has ever been taken therefrom, the correctness of the determination of the court may not be questioned herein. The order is conclusive and binding on the stockholders.''

Her final contention is that she should have been permitted to set-off against her double liability the amount of the claims she has against the bank. The claim of the banking commissioner against her for this double liability is $750.00 and her claim against the bank amounts to $1,589.80. Doubtlessly, she makes this contention because of her mistaken idea that the fund collected under this double liability will be an asset of the bank. We have previously said it would not be, and since it is not an asset of the bank, but is a fund for the benefit of the creditors of the bank, it follows that the defendant can not set-off against this claim anything that may be due her from the bank. A similar contention was before the Supreme Court of Montana in the case of Barth v. Pock, 51 Mont. 418, 155 P. 282, and was before the court of civil appeals of Texas in the case of Tyler County State Bank v. Johnson, 257 S. W. 932, and in both of those cases, identically the same contention was decided against the shareholders.

The judgment is affirmed.