## Denny, State Banking Commissioner, v. Kennedy.

(Decided April 30, 1929.)

BRADSHAW, MacDONALD & McMURRAY, J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellant.

J. D. MOCQUOT and WHEELER & HUGHES for appellee.

Opinion of the Court by Chief Justice McCandless
—Reversing.

On November 3, 1923, the Ohio Valley Bank & Trust Company was placed in the hands of the state banking commissioner for liquidation. The process of liquidation continued until September 26, 1928, when on motion of the commissioner in a proper proceeding, an order was entered in the McCracken circuit court adjudging it to be necessary for the payment of the corporate debts to severally assess the shareholders of the bank the par value of the stock owned by each, and directing the commissioner to make such assessment and collect same by demand or suit. W. B. Kennedy, the owner of five shares of stock, declined to pay the assessment, whereupon the commissioner filed this suit for collection. Defendant pleaded the five-year statute of limitation in bar of recovery. A demurrer to this plea was interposed and overruled. Plaintiff declined to plead further, and his petition was dismissed. He appeals.

It is admitted that the cause of action stated in the petition is based upon a liability created by statute, and that under the provisions of section 2515, Kentucky Statutes, such action is barred after five years from the time the cause of action accrued. The turning point in the case is the date upon which the cause of action accrued, which in the absence of a contrary provision in the statute means the first date upon which a suit could be filed against the shareholder to enforce his liability. 17 R. C. L. p. 748; 37 C. J. pp. 8-10-12. Dixon v. Labray (Ky.) 78 S. W. 430; Covington v. Patterson, 191 Ky. 370, 230 S. W. 542; Henderson v. Fielder, 185 Ky. 482, 215 S. W. 187.

To ascertain the first date on which such suit could have been filed it is necessary to construe the double liability provisions found in sections 547, 595 and 547a, Kentucky Statutes. Section 547, relating to banks, trust companies, investment companies, and surety companies, and section 595 relating especially to banks provide that stockholders in such companies "shall be liable equally and ratably, and not one for the other, for all contracts and liabilities of such corporation to the extent of the amount of their stock at par value, in addition to the amount of such stock."

Section 547·a, enacted in March, 1924, provides: "That any trustee, assignee for the benefit of creditors,. receiver or commissioner, having in his hands for administration and settlement any estate of an insolvent bank, trust company, guaranty company, investment company or insurance company under the orders or appointment of any court of competent jurisdiciton, when found necessary under the proper administration of the assets and the settlement of said estate, shall have the right and it is hereby made his duty upon the order of the court appointing him or upon the order of any court to which application may be made in case the original appointment was not made by a court, to bring such action or take such proceedings as may be necessary and proper to enforce the liability imposed upon the stockholders of any such companies or corporations by Chap. 32, Sec. 547, Ky. Statutes."

The lower court was of the opinion that suit could have been brought against the shareholders on November 3, 1923, the date the bank was placed in the hands of the banking commissioner, and, as more than five years elapsed after that date before the institution of the action, it held that the cause of action was barred. Appellant contends that the right to sue did not accrue until enforcement of the liability was found to be necessary under the provisions of section 547a. Conversely, appellee insists that, as the bank was placed in the hands of the banking commissioner before the act of 1924, that the accrual of the cause of action must be determined by a construction of the original act. Taking up the questions in their order: Prior to the enactment of section 547a, a suit against the stockholders could be instituted only by a creditor. Tiger Shoe Mfg. Co. v. Shanklin,. 125 Ky. 723, 102 S. W. 295, 31 Ky. Law Rep. 298, 31 L. R. A. (N. S.) 365. However, under the latter statute (section 547a) it is not only clear that such action may now be maintained by a trustee, assignee, receiver, or commissioner; but it is also evident that it was the intention of the Legislature to restrict the right of action to such fiduciaries. Also as the right to collect the double liability from the shareholders is not given to these fiduciaries until it is found necessary to make such collections under a proper administration of the assets, and then only upon an order of court, it is equally clear that the Legislature intended to postpone the right

of action for such purpose until such finding. So that if this statute is controlling the cause of action did not accrue in this case until such ascertainment, and the suit was filed in time. It is argued, however, that if the statute is given a retroactive effect it would be invalid. That question was before this court in Hughes v. Marvin, Banking Commissioner, 216 Ky. 190, 287 S. W. 561, in which it was said:

"The contention of the defendant is that the act of 1924 is void because it impairs the obligations of a contract and is an ex post facto law. In the case of Henley v. Myers, etc., 215 U. S. 373, 30 S. Ct. 148, 54 L. Ed. 240, the Supreme Court of the United States said:

" 'Equally without merit is the contention that the statute of 1899 impaired the obligations of the stockholders' contract, in that it substituted for individual actions against them a suit in equity by a receiver appointed after judgment against the corporation. In becoming stockholders, the defendants did not acquire a vested right in any particular mode lof procedure adopted for the purpose of enforcing their liability as stockholders. It is a well established doctrine that mere methods of procedure in actions on contract, that do not affect the substantial rights of the parties, are always within the control of the state. It is to be assumed that parties make their contracts with reference to the existence of such power in the state.'

"That authority is a complete answer to defendant's main contention. . . . She also contends that as this bank was insolvent and in process of liquidation, the act of 1924 did not apply, but in the case of Hanson, State Bank Examiner, v. Soderberg, 105 Wash. 255, 177 P. 827, we find this:

" 'Since the assessment in the present case was made under the 1915 act and the bank was in process of liquidation when the 1917 act took effect, it is the appellant's claim that the latter act can in no event be held applicable here. These statutes bear upon the remedy only. The liability of the stockholders remains the same as it was prior to their passage.

" 'In Morse on Banks & Banking (5th Ed.) vol. 2, sec. 677, it is said: "Thus where, at the time of the insolvency, the only remedy against the share-

holders was by proceedings in equity on the part of the billholders, and subsequently, pending the liquidation of the affairs of the bank, a new statute was passed creating the machinery of the bank commissioners and providing a simple and expeditious means whereby they could enforce collection from shareholders (the amount of actual liability not, of course, being varied), it was held that the shareholders in the already insolvent bank could not object to the application of this new statute to their own case. It bore upon the remedy only, not upon the liability.'' '

''That is a complete answer to her contention. Another case of exactly the same kind, and with a similar ruling, is Springhorn v. Dirks, 72 Mont. 121, 231 P. 912. Authority to the same effect will be found in 12 C. J., p. 677.''

However, while the Marvin case is authority for holding the 1924 act valid and applicable to the matter in question, nevertheless it is well settled that where there are two periods in which a cause of action may accrue, the statute of limitation must be computed from the accrual of the first; and if in fact the shareholders had acquired the right to sue on this claim prior to the enactment of section 547a, its enactment thereafter would not affect the statute of limitation, which had already begun to run. This brings us to a consideration of the original act.

In reference to this act in Tiger Shoe Mfg. Co. v. Shanklin, supra, we said: ''There is, however, a difference between the right to recover unpaid subscriptions and the right to enforce the double liability statute. The obligation on the part of the shareholder to pay for the stock subscribed for by him is a direct undertaking upon his part, and the unpaid subscriptions are a trust fund for the benefit of the creditors; whilst his liability for an amount equal to the value of his stock is a collateral or secondary obligation, in the nature of security. . . . It is not a corporation asset, nor a part of the estate of the corporation, and hence does not pass to the trustee, *but remains subject to the demands of the creditor if the assets of the corporation are insufficient to discharge his debt.''* (Our italics.)

The time at which the cause of action accrued was not considered in that case, and has not heretofore been before this court, though it has frequently arisen in other jurisdictions, and the above language is illuminating, as in cases where the liability of the shareholder is construed to be secondary it is generally held that a cause of action does not arise until the insolvency of the corporation, though there is much diversity of opinion as to how the insolvency of the corporation is to be determined. See Morse on Banks and Banking (6th Ed.) vol. 2, sec. 678; Cowden v. Williams (Ariz.) 259 P. 670, 55 A. L. R. 1059, and annotated note to the latter in which all of the later cases are collated and analyzed. Arizona has a one-year statute of limitation applying to liabilities created by statute. Its constitutional provision is quite similar to section 547, Kentucky Statutes. In determining when the cause of action accrued, it was said in the Cowden case, supra:

"The question then is: 'When did the cause of action accrue?' Under section 23, supra, it is evident that it cannot possibly accrue before the bank is taken over by the Superintendent of Banks or a receiver appointed by the court for the purpose of the dissolution or liquidation of the bank. Does it follow that it accrues immediately upon such taking over? There are three lines of cases upon this question. The first holds that the action to enforce the stockholders' liability cannot be brought until the corporation assets are all applied to its debts. The leading case so holding is Flynn v. American Banking & T. Co., 104 Me. 141, 69 A. 771, 19 L. R. A. (N. S.) 428, 129 Am. St. Rep. 378. The second is to the effect that there need not be an application of all the assets, but there must be a judicial determination of the fact of insufficiency of assets. Kirschler v. Wainright, 255 Pa. 525, 100 A. 484, L. R. A. 1917E, 393; Miller v. Connor, 177 Mo. App. 630, 160 S. W. 582; McLaughlin v. O'Neill, 7 Wyo. 187, 51 P. 243; Lynch v. Jacobsen (55 Utah, 129, 184 P. 929), supra. The third adopts the rule that the cause of action accrues as soon as the bank is insolvent. Bennett v. Thorne, 36 Was. 253, 78 P. 936, 68 L. R. A. 113; Shearer v. Christy, 136 Minn, 111, 161 N. W. 498; First National Bank v. Greene, 64 Iowa, 445, 17 N.

W. 86, 20 N. W. 754; Pate v. Bank of Newton, 116 Miss. 666, 77 So. 601.

" . . . We think there is no question that our constitutional provision makes the stockholders not sureties, but guarantors, of the debts of the corporation, and that the liability is secondary and not primary, applying to the right as well as to the remedy. It was never intended that creditors, on the default of a corporation in an obligation, should have the right of waiving action against the corporation, notwithstanding the latter might be able to pay, and could eventually be forced to do so, and resorting directly to the stockholders. On the contrary, its purpose was to provide that what could not be made from the corporation the stockholders would pay, to the limit set in the Constitution. Such being the case, until in some way it reasonably appears there will be a deficit after the assets are exhausted which the stockholders will be compelled to make up, no cause of action will exist, and the statute of limitations does not begin to run. The question then is, how shall such fact be made to appear? There are three possible ways. Unquestionably when the assets are exhausted the liability and the precise amount thereof is definitely determined. It may be months or years, however, before this occurs, and in the meantime the stockholders are left in a state of uncertainty as to their status, while the creditors are under the apprehension that, when the liability of the former is settled, their ability to pay may have changed for the worse. On the other hand, if the test be the time when the corporation first goes into the hands of a receiver, the receiver must then, in order to be sure that creditors are protected, file his suit not more than a year after he takes over the bank, regardless of the fact that it may reasonably appear to him at the time that by careful management the bank will pay out. Such a course would in many cases needlessly harass the stockholders, for many corporations which go into the hands of a receiver are ultimately able to meet all their obligations from their own assets.

"The third method is by a judicial investigation and determination of the very matter in issue, to-wit, the insolvency of the corporation and the

amount thereof. This investigation and declaration may be made at any time after the receiver has taken charge, at his request or at. that of a creditor or stockholder.

"It seems to us that the method last mentioned is the most logical and the one which best carries out the purpose of the constitutional provision, with the least injury to either stockholder or creditor. While the greater number of authorities accept the second method of determining the accrual of the cause of action, we think they are either based on the doctrine of primary liability, or else an application of the principle of secondary liability to the remedy only and not to the right. We therefore hold that the double liability of stockholders under the constitutional provision above set forth did not give rise to a cause of action until a judicial determination of the fact of insolvency, and necessarily the statute of limitations does not commence to run until then."

The reasoning and conclusion in the above opinion appeal to us as sound and convincing. A shareholder is protected from being harassed with needless suits, and yet a method is suggested by which a determination of the matter of insolvency may be expedited. Thus construed, the statute of limitation does not begin to run until a judicial ascertainment of insolvency, and this matter should be brought to the attention of the court within a reasonable time after the corporation is placed in the hands of the commissioner. A creditor or shareholder may do this and hasten such ascertainment. Such action, though, is largely based upon the condition of the corporation as reported by the commissioner. As to whether a shareholder could rely on unreasonable delay upon the part of the commissioner in reporting the condition of the corporation as an estoppel in aid of his plea of the statute of limitation we need not now determine, as no such estoppel is pleaded. It follows that as pleaded the statute of limitation was not applicable in this case, and the court erred in overruling a demurrer thereto.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.