# Wilson, Banking Commissioner, et al. v. Combs.

(Decided January 19, 1932.)

CRAFT & STANFILL for appellants.

JESSE MORGAN for appellee.

204

Between April 5, 1928, and November 15 of the same year the Perry Bank & Trust Company, a corporation, operated a bank in Hazard, Ky., and on the latter date the banking commissioner of this commonwealth took charge of its assets for the purpose of liquidating and winding up its affairs, all of which was done in accordance with and under the applicable statutes. F. L. Cisco was duly and regularly appointed by the then banking commissioner, a special deputy banking commissioner, for the purpose of assisting the regular one in liquidating and distributing the assets of that institution, and he personally took charge of its affairs for that purpose, and in the name of his principal filed reports of his "acts and doings in the administration of" the bank of which he had charge, at each session of the Perry circuit court following his installation.

On July 6, 1929, he manifested to the Perry circuit court, while it was in session, the necessity, in order to pay the creditors of the bank of which he had charge, of collecting the double liability imposed upon its stockholders by section 595 of the 1930 edition of Carroll's Kentucky Statutes, and he asked the court to so determine and to authorize an assessment against the stockholders for an amount equal to the stock held by them, and to demand the collection thereof for the purpose indicated. The court, being advised, sustained the motion and granted the order, but did not incorporate therein express authority to collect the assessment *by suit*. Five days thereafter, and on July 11, 1929, the order was amended so as to authorize the collection of the double liability assessment by suit. Such orders and directions from the Perry circuit court were obtained upon the initiative of the deputy banking commissioner, and he was authorized to take the necessary steps, even to the filing of suit, to collect such assessments. On July 21, 1931, this action was filed in the Perry circuit court by the banking commissioner, C. S. Wilson, and his deputy, F. L. Cisco, against appellee and defendant below, John Wesley Combs. They alleged in their petition the facts above stated, but, before the case was submitted, and on September 26, 1931, an amended petition was filed, in which it was averred, inter alia, that five days prior thereto, and on September 21, 1931, the banking commissioner applied to the Perry circuit court,

which was then in session, for an order directing him to collect the double liability and to prosecute suits therefor against the various stockholders of the Perry Bank & Trust Company, and to amend the prior orders so as to authorize and empower the commissioner to make such assessments and to collect them by suit. The court sustained that motion, and entered an order amending its prior ones so as to vest the power and authority to make such precedent assessments by the banking commissioner instead of by the deputy banking commissioner, Cisco, who had been given such authority in the prior orders. Defendant filed both a special and general demurrer to the petition as amended, each of which the court sustained, and plaintiffs declining to plead further, the petition was dismissed, to reverse which they prosecute this appeal.

In an endeavor to uphold the court's ruling in sustaining the special demurrer, counsel for defendant argues that the orders of the circuit court made upon the ex parte application of the deputy banking commissioner prior to the filing of the action were insufficient to vest authority in the banking commissioner to maintain it, for two reasons: (a) That the application therefor should have been made by the banking commissioner instead of by his deputy, but that, if mistaken in that, then (b) that the orders themselves failed to manifest the necessary finding of fact and to make the necessary adjudication to authorize the maintenance of this action, even if they were made at the request of the banking commissioner himself. But we find ourselves unable to accept either of those reasons.

The petition alleged that the deputy banking commissioner was duly authorized by the banking commissioner to apply for and obtain the necessary adjudication from the Perry circuit court and the order to collect the double liability imposed by the statute, and that such deputy banking commissioner, pursuant to the authority thus given, had taken the necessary action for that purpose and obtained the necessary authority, and the copies of the orders of the Perry circuit court sustained those allegations, except that they do not contain the authority of the then banking commissioner to his deputy to take such action. However, the contrary fact is alleged in the petition, and, for the purposes of the demurrer, must be taken as true. Section 165a-17, which authorizes the

appointment of the deputy commissioner, says, inter alia:

"The banking commissioner may, from time to time authorize a special deputy commissioner to perform such duties connected with the liquidation and distribution, as the banking commissioner may deem proper."

Further along in the same section the duty is imposed upon the banking commission "in person, or by deputy," to file the required reports with the clerk of the circuit court of the county in which the insolvent institution is located, and this, as we have seen, was done by Cisco, the deputy banking commissioner, from the time he took charge until the filing of this action. Such imposed acts and duties necessarily pave the way for and look to the final payment of the debts of the insolvent institution, either from its assets, if sufficient for that purpose, but, if not, with proceeds of the trust fund to be realized from the collection of the statutory imposed double liability, and whether such precedent acts are performed by the commissioner or by his deputy cannot, as we interpret the statute, affect the right of the commissioner to maintain the action (if necessary for the payment of creditors) which is expressly given by section 547a of our present Kentucky Statutes, and which is chapter 11, p. 16, of the Session Acts of 1924.

Authority therein given to take the necessary steps for the collection of the trust fund imposed by section 595, supra, is to "any trustee, assignee for the benefit of creditors, receiver or commissioner, having in his hands for administration and settlement any estate of an insolvent bank," etc. The deputy banking commissioner is a trustee in charge, or a commissioner in charge, of the institution for which he may be designated by the banking commissioner, and, when authorized to take action within the jurisdiction of the banking commissioner looking to full payment of the debts of the institution, we conclude that he has the right to do so in his own name. A reasonable interpretation of the applicable statutes makes it clearly certain that the purpose of the Legislature in requiring such precedent steps is to procure a judicial or quasi judicial manifestation of the facts showing the necessity for the collection of the double liability trust fund in order to pay the debts of the corporation,

and it would appear that, when the required procedure was taken by one immediately connected with the bank and charged with the duty of winding up its affairs, although he be a deputy instead of a principal official, it would satisfy the requirements. Consequently, when the initiatory steps are taken by the deputy commissioner, the conclusion is inescapable that it is done for and on behalf of the superior officer, who in this case was the state banking commissioner, and which the latter could ratify and appropriate, and, when done, the claimed defects (which at most are extremely technical), if defects they were, would be cured. But, were it otherwise, the order made on September 21, 1931, was nunc pro tunc in its nature, and recited that the order ran in the name of the deputy banking commissioner through inadvertence and mistake, and we are inclined to the view that, if the original orders were defective in the respects mentioned, the amended one had the effect to cure such defects and to authorize the maintenance of the suit as brought. We therefore conclude that the court erred in sustaining the special demurrer filed to the petition as based on argument (a).

In support of argument (b), it is insisted that the orders of the Perry circuit court, hereinbefore mentioned, were not sufficient in their terms to authorize the bringing of this action, even if they were procured by and in the name of the proper party, and the cases of Hughes v. Marvin, Banking Commissioner, 216 Ky. 190, 287 S. W. 561, and Denny, State Banking Commissioner, v. Kennedy, 229 Ky. 178, 16 S. W. (2d) 1030, are relied on in support of that contention. Those opinions require only an ex parte adjudication of the facts creating the necessity for the collection of the double liability, with the necessary orders and directions to the trustee in charge to proceed to do so. The complained of orders herein did that, and found that it was necessary to collect the full double liability in order to pay the creditors of the Perry Bank & Trust Company, and expressly directed the trustee in charge (and later by the nunc pro tunc order the banking commission) to make such assessments and the collection thereof, even by suit, and the record plainly manifests at least a substantial compliance with the requirements set forth in those two opinions.

In further support of the court's ruling in sustaining the general demurrer, it is argued that, inasmuch as

the Perry Bank & Trust Company was a corporation formed for the purpose of absorbing and that it did take charge of the merged assets of two prior banks doing business in Hazard (the Perry County State Bank and the Hazard Bank & Trust Company), the petition was defective in failing to allege that the two merged banks were likewise insolvent and that it was necessary to collect the double liability of the stockholders in them in order to liquidate the debts of the consolidated institution, the Perry Bank & Trust Company. Especially so if defendant was the holder of the fifteen shares of the par value of $100 each in either of the consolidated institutions, and that, since it appears in the petition that he did own that amount of stock in the Hazard Bank & Trust Company, the petition is defective, and for which reason also the general demurrer was properly sustained.

If the petition had merely alleged that defendant was the owner of that much stock in one of the merged banks without further averring that by or after the merger he became a stockholder in the new institution in the same amount of stock, the position of counsel for defendant might be maintainable. But the petition expressly avers that the defendant "is now, was at the time of the closing of the said Perry Bank and Trust Co. (the consolidated bank) . . . the owner of 15 shares of the capital stock of the Hazard Bank and Trust Co. *and of said Perry Bank and Trust Co.,* which first named institution was merged with the said Perry County State Bank, under the name and style of Perry Bank and Trust Company as aforesaid, of the par value of $100 each," (Our emphasis.) It will therefore be seen that, notwithstanding defendant's ownership of stock in one of the merged banks, he was also the owner of 15 shares of stock in the consolidated bank, the affairs of which are in liquidation, and the source from which he obtained that stock, or the manner whereby he became its owner, is immaterial, and can have no effect upon his liability in this character of action. The essential fact is, that at the time of the closing of the Perry Bank & Trust Company, and at the time that the state banking commissioner took charge of its affairs with the view of winding them up, as required by the statutes, defendant owned stock in the bank being liquidated, and that being true, he became obligated for the double liability imposed by the statute if the statutory conditions to impose it were complied

with. We have found that they were, and this argument in support of the court's ruling in sustaining the general demurrer is also without merit.

Wherefore, the judgment is reversed, with directions to overrule both the special and general demurrers filed to the petition as amended, and to set aside the order dismissing the action, and for further proceedings consistent with this opinion.