CASE 75—MANDAMUS—MAY 18.

# Board of Council of Danville, v. Fiscal Court of Boyle County,

APPEAL FROM BOYLE CIRCUIT COURT.

COUNTIES—DUTY AS TO PUBLIC WAYS WITHIN A CITY.—Where a county under the act of March 17, 1896, acquires a turnpike lying partly within a municipality, so much of the road as is so situated comes immediately within the control of the municipality, and it is the latter's duty to maintain it.

Board of Council of Danville v. Fiscal Court of Boyle County.

C. C. FOX FOR- THE APPELLANT.

Questions discussed:

1. The duty of the fiscal court of Boyle county to keep in repair all turnpike roads bought by it under Act of 1898, although a part of said roads lies within the corporate limits of Danville, and the right of said court to abandon the portions of said turnpikes lying in said city.

2. The right of the corporation of the city of Danville to a mandamus to compel said fiscal court to discharge said duty as to the portions of the turnpikes owned by it that lie in the city.

Citations:    24 Am. & Eng. Ency. of Law, 120; 26 L. R. A., 663; 3 Met., 494; 2 Met., 65; 18 B. Mon., 850; 13 Bush, 336; Civil Code, section 477; 4 Ky. Law Rep., 727; 9 Ky. Law Rep., 352; 10 Ky. Law Rep., 844; 17 Ky. Law Rep., 574; 3 Met., 490; 7 B. Mon., 38; 11 Bush, 554; Acts 1896, sec. 6, pp. 39-41.

CHARLES H. RODES ON THE SAME SIDE.

The act of 1896 imposes on the county courts the imperative duty of maintaining all the roads which the act authorizes it to purchase and not simply so much of those roads as lie outside the territorial limits of a municipality.

Citations: . Session Acts, 1896, p. 39; Cassidy v. Young, 92 Ky., 227; Ohio County Court v. Newton, 79 Ky., 267; Dickens v. Cave Hill Cemetery Co., 93 Ky., 385; Hammar v. City of Covington, 3 Met., 494.

ROBT. HARDING FOR THE APPELLEE.

1. The lower court had power by mandamus to require the appellee to keep in repair the streets and road-ways of the city of Danville described in the petition.

2. The lower court had power by mandamus to prescribe the way and manner in which the road-ways referred to should be kept in repair by the Boyle fiscal court.

3. The appellee is required by law to keep in repair for public travel the road-ways aforesaid in the town of Danville, which is a city of the fourth class.

Citations:    17 Ky. Law Rep., 1313; Ky. Stats., secs. 3560, 3565, 4288, 4308; Acts 1896, sec. 6, p. 41; sec. 3579—fourth class city charters.

CHARLES C. FOX AND CHARLES H. RODES FOR APPELLANT IN A PETITION FOR A REHEARING.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Under the act entitled "An act to provide free turnpikes and gravel roads," approved March 17, 1896 (see Carroll's

[ 39 ]

610          KENTUCKY REPORTS.          [Vol. 106

Board of Council of Danville v. Fiscal Court of Boyle County.

Ky. Stats., pp. 1605-1609, section 4748B), the fiscal court of Boyle county purchased certain turnpike roads in that county. A part of the roads so purchased lay within the corporate limits of the city of Danville, and had been kept up by the turnpike companies to the width of eighteen feet, without expense to the city, up to the time of their purchase, although used as streets of the city. The city insists that the fiscal court should still continue to keep up the portion of the turnpikes so purchased within the city limits just as the previous owners had done. The fiscal court, on the other hand, insists that the roads so purchased, in so far as they lie within the city limits, are streets of the city, and must be kept up by it. The parties being unable to agree upon their respective rights, this action was instituted to have them judicially determined. The lower court having decided in favor of the fiscal court, the city has appealed.

The question involves the proper construction, not only of the statute referred to, but of the other statutes in force at the time it was enacted, and with reference to which it was passed. At the time of the enactment of the statute the Legislature had provided a system for the working and keeping in order of the public highways. Besides the ordinary public highways, there were a great many toll pikes in the State, and there was a general demand that these toll pikes should be made free. With this view section 1 of the statute provides for the holding of an election to take the sense of the qualified voters of the county upon the proposition to have free turnpikes; sections 2, 3 and 4 specify how this election is to be held; and section 5 provides that, if the vote is in favor of the proposition, the fiscal court may acquire all the turnpike roads in the county on the best terms consistent with public interest, and may provide for the construction of new turn-

pikes when the public good demands it.   Section 6 then
provides:

"All turnpike and gravel roads thus acquired or
constructed shall become public roads and shall be
maintained and kept in repair by and through the provi-
sions of the fiscal court.   Said court may provide for keep-
ing them up as is directed and permitted under the general
road law, or it may adopt other rules for the maintenance,
repair and management of the same.   But said roads shall
be free of toll to the traveling public."

The mode of keeping up the roads under the general
road law is given in sections 4306-4308 of the Kentucky
Statutes.     By section 4306 it is declared:     "The fiscal
court of each county shall have general charge and super-
vision of the public roads and bridges therein, and shall
prescribe necessary rules and regulations for repairing
and keeping the same in order and for the proper manage-
ment of all roads and bridges in said county. . . . The
public roads shall be maintained either by taxation or by
hands allotted to work thereon, or both, in the discretion
of the fiscal court;" by section 4307 the limit of tax to be
levied is given, and by section 4308 the mode of working
the roads is prescribed.   Section 3579, Kentucky Statutes,
exempts every citizen of the city from working on the pub-
lic roads, so that, construing this section in connection
with section 4308, the latter section must be held only to
apply to citizens of the county not living within the city.

Thus it will be seen that one of the ways of keeping in
repair the roads purchased under the act is by the labor of
the citizens liable to work on the roads, and the fiscal
court, in its discretion, may follow this method without
levying any taxes for this purpose.   But the citizens of the
county are only to work the county roads, and it would

hardly be contended that it was contemplated by the Legislature, when it passed the act referred to, that the citizens of the county at large were to come within the corporate limits of the city, and work the city streets, when the citizens of the city were exempted.

Besides, by section 3560 of the Kentucky Statutes, governing the class of cities to which Danville belongs, it is enacted:

"Public ways as used in this act shall mean all public streets, alleys, sidewalks, roads, lanes, avenues, highways, and thoroughfares, and the same shall be under the exclusive management and control of the city, with powers to improve them by original construction, or to reconstruct them, as may be prescribed by ordinance."

Section 3565 further provides:

"The cost of reconstructing public ways, streets, or alleys, or repairing of the same and the cost of making footway crossings, shall be borne exclusively by the city."

By section 4306, above quoted, the fiscal court has general charge and supervision of the roads which it is required to maintain, and by section 3560 the city is given exclusive management and control of all public ways within the city. Similar provisions are found in the laws regulating other classes of cities. In passing the statute referred to, the Legislature could not have contemplated that both the fiscal court and the city should have control of that part of the pike lying within the city. Construing all these statutory provisions together, we think they mean simply that the turnpikes, when purchased by the fiscal court, become public highways; the part lying within the city, being a public way, should be controlled by the city, and the part without the city, falling within the fiscal court's jurisdiction should be controlled by it.

Any other construction would create great confusion.

Board of Council of Danville v. Fiscal Court of Boyle County.

To illustrate:  Suppose the fiscal court undertook to keep the pike in repair, and, after it had fixed it as it thought best, the city council should conclude that the interests of the city required it should be fixed differently; it is very clear that, if the fiscal court has the power of control, it could require the city council to leave the way as it had fixed it, however much this might be to the detriment of the city.  The city might require a vitrified brick pavement or a smooth asphalt, when the fiscal court might think that rough cobblestones were much to be preferred.

Or, again, suppose the boundary of the city as now located includes no part of one of these pikes, and it should be.extended so as to take in a mile of it ten years from now; why should the mile of pike so taken in stand differently from any other county highway taken into the city by the extension of the boundary?  Or, if a new town should be located on one of these turnpikes twenty years from now why should not the part of the turnpike in the town used as a street stand just as any other county highway taken in its boundary?

It is hard to believe the Legislature contemplated that the pikes purchased under this act should stand differently from other highways.  Such a construction would destroy the uniformity of our road system.  It would take away from the towns and cities of the State powers absolutely essential to their well being, and impose on the fiscal court a duty it should never be called upon to discharge. The words of the act, that the turnpikes and gravel roads thus acquired or constructed "shall be maintained and kept in repair by and through the provisions of the fiscal court," must be read in connection with the other words of the act making them public roads, and directing that the fiscal court may keep them up under the general road law.

Board of ·Council of Danville v. Fiscal Court of Boyle County.

Thus construed, it is manifest that the Legislature intended the roads so purchased to be public highways, and that the duty of the fiscal court as to keeping them in repair is to be measured by the other statutes in force at the time, defining very clearly its jurisdiction, and committing to the city all that part of the public ways lying within its boundary.

The learned counsel insists that, as the statute expressly says that the turnpikes so acquired shall be maintained by the fiscal court, for this court to rule otherwise is for it to assume the powers of the legislative branch of the government.    But the rule is elementary that the construction of a statute must be reasonable.  Thus, in the old case where the statute forbade the drawing of blood in the street, it was held that a physician who bled a patient in the street, of necessity, to save his life, was not guilty, although within the words of the act.   There is another elementary rule, equally imperative, that statutes *in pari materia* must be · construed together, and that the legislative intention apparent from the whole body of the enactments must be carried into effect.    Under these rules, the expression relied on for appellant can not be detached from its connection, and, though general in its character, is to be read as part of the system of law regulating the highways of the State.   It is true the words of a statute are to be given controlling effect in determining the legislative intention; but an isolated, general expression, where it is clear the Legislature had not this in mind, will not be construed to set aside a settled legislative purpose clearly expressed in a number of other carefully drawn enactments.

Judgment affirmed.   Whole court sitting.