## Milner et al. v. Gibson et al.

(Decided June 6, 1933.)

598

J. R. ESKRIDGE, MOORMAN & BEARD, DAVID C. WALLS, SANDIDGE & SANDIDGE, and BAILEY P. WOOTTON, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellants.

P. M. BASHAM and JOHN P. HASWELL for appellees.

R. MILLER HOLLAND, RICHARD H. SLACK, CARY, MILLER & KIRK and W. S. BALL amici curiæ.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The major question presented by this appeal is the constitutionality of an Act of the General Assembly, chapter 19 of the Acts of 1932, page 116. It directs the banking and securities commissioner, during the period of liquidation of any bank or trust company or combined bank and trust company, organized under the laws of this commonwealth, to permit the depositors to perfect a plan and articles of agreement, outlining, in general, a proposed plan of consolidation or reopening of such bank, trust company, or combined bank and trust company, and confers authority on him to approve or veto such plan and reopening of the institution.

On the 15th day of January, 1932, prior to its enactment, the Farmers' Bank & Trust Company, engaged in the business of a combined bank and trust company at Hardinsburg, Breckinridge county, Ky., closed its doors and placed all of its assets and property of whatever nature in the possession of the banking and securities commissioner as provided by section 165a-17, Ky. Statutes. Since that time, the banking and securities commissioner, by one of his deputies, has been continuously in charge of the bank and trust company as authorized by section 165a-17, Ky. Statutes, exercising the authority conferred on him by section 165a-1 et seq. One portion of section 165a-17 reads:

"The banking commissioner shall cause notice to be given by advertisement in such newspapers as such bank's semi-annual reports are published, weekly for three consecutive months, calling on all

persons who may have claims against such insolvent bank to present the same to the banking commissioner, and make legal proof thereof, at a place and within a time not more than six months after the last date of publication, to be therein specified. He shall mail a copy of such notice to all persons whose names appear as creditors upon the books of such bank. * * * Claims presented after the notification of the time fixed in the notice to creditors, shall be entitled to share ratably in the distribution to the extent of the assets in the hands of the banking commissioner, equitably applicable thereto.

"The assets of any bank in liquidation under this act shall be applied (a) to the payments of costs and charges of liquidation, and preferred claims; (b) to satisfaction of secured claims to the extent of such security; (c) to the satisfaction of all other debts, including unsatisfied balances of secured claims, ratably and without preference to the amount allowed at the time of distribution, and (d) the residue, after all liabilities are paid shall be distributed for the benefit of the stockholders ratably, or may, on their request, be turned over to them or their agent for settlement."

The same section provides that within thirty days after the commissioner takes charge of any bank, or combined bank and trust company, under the provisions thereof, he shall file in the office of the clerk of the circuit court in the county in which it is located a detailed statement of the form prescribed in section 165a-10, including the amount of assets and liabilities of the bank or bank and trust company, and thereafter on the first day of each succeeding session of the circuit court, or sixty days in counties having courts of continuous session, he shall file a report of his acts and doings in the administration of such bank or bank and trust company, since the last report. It also provides that any person, firm, or corporation may, by petition addressed to the circuit court, have any act of such commissioner reviewed by the court in the same manner and by the same rights and powers as would have attached had such commissioner been regularly appointed by the court.

A casual reading of the act of 1932 shows that it deals with and relates to the reorganization of suspend-

ed or closed banks and trust companies, and that its purpose is to confer on the depositors, subject to the approval or veto of the banking and securities commissioner and circuit court of the county in which it is located, privileges not accorded them by chapter 9b, or section 165a-1 to, and including section 165a-22, Ky. Statutes. It is plain that the act of 1932 merely provides a plan of reorganization and reopening of the institution then in process of liquidation. It provides that not less than 25 per cent. of the depositors, with deposits in excess of $25 each, may notify, in writing, the banking and securities commissioner that they desire to attempt to reorganize or otherwise reopen or consolidate such bank or trust company or combined bank and trust company, then it shall be his duty to suspend the process of liquidation and preserve the assets of the institution and permit the depositors, within a reasonable time, to perfect a plan and articles of agreement, outlining, in general, the proposed plan, and to procure the signatures of depositors representing 75 per cent. of all debts, exclusive of deposits of less than $25.

The required number of depositors of the Farmers' Bank & Trust Company originated a plan of reorganization and reopening of the bank and trust company, procured the signatures of more than 75 per cent. of the depositors as required by the act of 1932, presented it to the banking and securities commissioner for his approval or veto. On his declining to do so, they presented their petition as authorized by section 165a-17, addressed to the circuit court of the county in which the bank was located, and in which the proceeding was pending for the liquidation of the bank and trust company, and sought the intervention of the court to adjudge their rights to the reorganization.

Certain questions of practice and procedure were presented in the circuit court, which we shall hereafter consider. The court, after considering the pleadings and the evidence adduced, decreed that the petitioning depositors were entitled to reorganize and reopen the bank in accordance with the plan set forth in the order of court. Certain of the depositors, the banking and securities commissioner and his deputy, are here challenging the validity of the act of 1932, insisting that the relations of debtor and creditor existed between the depositors and the bank prior to, and at the time of, the

enactment of the 1932 act, and that it destroys such relations and deprives them of the benefits of section 165a-17, Ky. Statutes; that it requires a surrender, forfeiture, or cancellation of a part of their claims against the bank, and the right to look to the double liability of the stockholders as well as a right of action against the officers and directors of the bank for their malfeasance in office.

It is also insisted that the act of 1932 is within the inhibition of the due process clause of the Constitution of the United States (Amendment 14). The ultimate purpose of both the act of 1912 and of 1932 is remedial, to enable the depositors of an insolvent bank or insolvent bank and trust company, to retrieve the assets, and avoid a loss of their claims against it, by and through the instrumentality of the banking and securities commissioner.

Under the act of 1912, when an insolvent bank, or combined bank and trust company, was placed, by the board of directors as provided by section 165a-18 thereof, in charge of the banking and securities commissioner, and after he assumed charge of it and of the possession of all of its assets and property of whatever nature, then all rights of whatever nature vested in the banking and securities commissioner and the only remaining right of the depositors was the right to verify, present their claims, grieve, and hope to receive their ratable share in the distribution of the assets by the commissioner, or his deputy, in the manner and within the time required, in his discretion, subject to the supervision of the courts. Also under the act of 1912, the banking and securities commissioner, in the exercise of a sound discretion, may compromise or settle any claim in favor of, or against, the corporation, retain and collect the notes, bills, choses in action, or securities owned by the institution, which make up a part of its assets, or if, in the exercise of his discretion, he deems it best, he may sell the same, including the real estate owned by it, without the consent and approval of the depositors or other creditors. Cumberland State Bank v. White, 222 Ky. 126, 300 S. W. 339; Cartmell v. Commercial Bank & Trust Company, 153 Ky. 798, 156 S. W. 1048; Ex. parte Smith, 160 Ky. 83, 169 S. W. 582; American Southern National Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959; Jennings

v. Fidelity & Columbia Trust Company, 240 Ky. 24, 41 S. W. (2d) 537; Fletcher's Cyclopedia of Corporations, chap. 61, sec. 4840; Dorman v. Dell, 245 Ky. 34, 52 S. W. (2d) 892. The act of 1932 does not lessen his power. A reorganization under it does not deprive the depositors of existing rights, nor impair any contract enforceable by them, for after going into liquidation they no longer have any existing contractual rights to be impaired. In fact, they thereafter have only the, restricted rights afforded them by section 165a-17, subject to the review of the courts. They have no absolute right to continue liquidation when that course is no longer necessary or adequate to secure their rights. Dorman v. Dell, supra. If any contract or right of the depositors is affected or impaired, it is not by the act of 1932, but it will be the fault of the plan of reorganization which we shall hereafter consider.

When a reorganization plan is approved by the commissioner, either with or without a decree of court, and the plan is permitted to be executed, and the bank reopened, such acts in essence and in effect are a sale of the assets of the bank in his charge, for and in consideration of the reopened bank paying to the depositors and other creditors the agreed price therefor as set forth in the plain of reorganization. The power thus exercised by him under the supervision of the court is equivalent to that which he, with the advice of the court, may exercise under the act of 1912, without the aid of the act of 1932. Jennings v. Fidelity & Columbia Trust Company, 240 Ky. 24, 41 S. W. (2d) 537. The values of the assets of the bank, or bank and trust company, including the liability of the officers for negligence, fraud, or other wrongdoing as well as the claims against the stockholders for their double liability, are presumed to be within the knowledge of the commissioner when he approves the plan of reorganization, either with or without the direction of the court, and the values thereof are presumably taken into consideration by him when consenting to the reorganization and reopening of the bank, and by the court when directing him to do so, and thus the depositors and other creditors obtain the benefits thereof, by and through the reorganization and reopening of the bank. In respect to the double liability of the stockholders, this liability continues to the amount of the reorganized capital stock, after the reorganiza-

tion, for the protection and security of the depositors and other creditors, and exists by reason of the plan of reorganization, although they may be different individuals. It is neither thereby lost nor surrendered. Instead of impairing their rights, the act of 1932 bestows upon the depositors and creditors a privilege, not existing anterior to its enactment, of participating in the restoration of the control of the assets of the bank to sympathetic, interested parties and removing that of the antipathetic, disinterested liquidating agent and his assistants. With confidence, the nonconsenting depositors and the banking and securities commissioner present Hessen Siak Shams v. Nebraska State Bank (D. C.) 48 F. (2d) 894, not only as illustrative but as conclusive of the constitutional invalidity of the act of 1932. An examination and comparison of the Nebraska Statutes, 1929 Ed. page 119, sec. 8-181, on which the court based his conclusion in the case of Shams v. Nebraska State Bank, with section 165a-17 of our Statutes, disclose that the powers of the commissioner under the Nebraska statute are limited, whereas under our Statutes they are plenary and exclusive, only subject to review by the courts. Under the former, the taking over of the bank by the department of trade and commerce to manage and regulate does not affect a dissolution of the corporation, but it retains its identity and is subject to suit, as was held in Shams v. Nebraska State Bank, by a holder of a certificate of deposit, who it is also held was not deprived of his right of action against the bank in the course of liquidation. See Svoboda v. Snyder State Bank, 117 Neb. 431, 220 N. W. 566; Brownell v. Svoboda, 118 Neb. 76, 223 N. W. 641. Under the Nebraska statute the creditors may levy an execution on the assets of the bank and prove that the commissioner has been in charge longer than reasonable and subject its assets to the payment of the execution. McBride v. Taylor, 117 Neb. 381, 220 N. W. 693. It is an established rule that an enactment accords due process of law, if it affords a method of procedure, with notice, and operates on all alike. A statute is consistent with due process where it gives the power of preliminary procedure to a board or commission, and the final hearing and determination of the courts. Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 36 S. Ct. 637, 60 L. Ed. 1084. The law presumes that public officials discharge their official duties. This presumption is controlling until the

contrary is affirmatively charged and shown. It is presumed in the absence of a showing to the contrary that the banking and securities commissioner had given, before the passage of the act of 1932, the statutory notice to creditors to prove and present their claims and that all of the depositors agreeing on the plan of organization as well as the nonconsenting depositors had filed their claims as creditors before the presentation to the commissioner of the plan of reorganization and reopening the bank, and thereby became and were parties to the proceeding in the circuit court, both before and after the passage of the act of 1932. Hughes v. Marvin, 216 Ky. 190, 287 S. W. 561; Thompson v. Denny, 233 Ky. 699, 26 S. W. (2d) 514; L. & N. R. R. Co. v. Bullitt County, 247 Ky. 489, 57 S. W. (2d) 506. The Nebraska statute embraces no provision· requiring or providing for notice affording the depositors an opportunity to be heard in court. This is an essential and sufficient reason for the distinction between it and our statutes. Many other cases are cited by the appellants sustaining the principles applied in the Shams Case, but none of them considered remedial statutes in pari materia enacted in the exercise of the police power.

Statutes in pari materia or those which relate to the same person or thing, or to the same class of persons or things, or which have a common purpose, must be construed together and the legislative intention apparent from the whole enactment must be carried into effect. Board of Council of Danville v. Fiscal Court, 106 Ky. 608, 51 S. W. 157,, 21 Ky. Law Rep. 196; Commonwealth v. International Harvester Co., 131 Ky. 551, 115 S. W. 703, 133 Am. St. Rep. 256; American Tobacco Co. v. Commonwealth, (Ky.) 115 S. W. 755; Commonwealth v. Alford's Ex'r, 187 Ky. 106, 218 S. W. 721; Commonwealth v. Vanmeter, 187 Ky. 807, 221 S. W. 211; Dunlap v. Littell, 200 Ky. 595, 255 S. W. 280; Indiana Truck Corp, v. Hurry Up Broadway Co., 222 Ky. 521, 1 S. W. (2d) 990, 991. In the last cited case the rule stated in 25 R. C. L. sec. 285, page 1060, was quoted and approved. It reads:

"'It is a fundamental rule of statutory construction that not only should the intention of the lawmaker be deduced from a view of the whole statute and of its every material part, but statutes in pari materia should be construed together. This

means that, for the purpose of learning and giving effect to the legislative intention, all statutes relating to the same subject are to be compared, even though some of them have expired or been repealed, and, so far as still in force, so construed in reference to each other that effect may be given to all of the provisions of each, if that can be done by any fair and reasonable construction.' 25 R. C. L. p. 1060, sec. 285.''

The acts of 1912 and 1932 are statutes in pari materia and it should be conceded that the section of the former requiring and providing the manner of giving notice to, and providing for a hearing of, the depositors and creditors must be regarded as a part of the latter, and therefore the act of 1932 is not within the principles stated in Campbell v. Holt, 115 U. S. 632, 6 S. Ct. 209, 29 L. Ed. 483; Buchanan v. Warley, 245 U. S. 60, 38 S. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201; Tyson & Bros. v. Blanton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236; Coe v. Armour Fertilizer Works, 237 U. S. 415, 35 S. Ct. 625, 59 L. Ed. 1027; Security T. & S. V. Co. v. Lexington, 203 U. S. 325, 27 S. Ct. 87, 51 L. Ed. 204; L. & N. R. R. Co. v. Central Stock Yards Co., 212 U. S. 132, 29 S. Ct. 246, 53 L. Ed. 441; Central of Georgia Ry. Co. v. Wright, 207 U. S. 127, 28 S. Ct. 47, 52 L. Ed. 134, 12 Ann. Cas. 463, and other cases that might be cited.

Banks and banking are proper subjects of legislative control and strictly within the internal police power of the state. Thompson on Corporations (1st Ed.) sec. 640; Blaker v. Hood, 53 Kan. 499, 36 P. 1115, 24 L. R. A. 854; American Southern National Bank v. Smith, 170 Ky. 512, 186 S. W. 482, Ann. Cas. 1918B, 959. They are subject to such regulations as the state may lawfully impose in the exercise of its police power to protect the welfare of the public (Holden v. Hardy, 169 U. S. 366, 18 S. Ct. 383, 42 L. Ed. 780), where there are feasible reasons of public policy for them (Minnesota Iron Co. v. Kline, 199 U. S. 593, 26 S. Ct. 159, 50 L. Ed. 322). The state is not required to pay tribute to them or their or other private contracts at the expense of the public welfare. It is only arbitrary restraint and impairment of contracts (article 1, sec. 10), not immunity from reasonable regulations to safeguard the public interests, that the Federal Constitution prohibits. Miller

v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829. Contracts being subject to legislation enacted in the exercise of the police power, it is not invalid merely because of its incidental effect upon them. St. Louis Poster Adv. Co. v. St. Louis, 249 U. S. 269, 39 S. Ct. 274, 63 L. Ed. 599. They must yield to the public welfare when the latter is appropriately declared and defined, and the two conflict. Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U. S. 372, 39 S. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420. Where made by parties, either of whom is subject to statutory regulations, they must of necessity be subject to the exercise of the sovereign power of the government to enact legislation for the protection of the general welfare. Rast v. Van Deman & L. Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455. When the public welfare demands the exercise of the sovereign right of the government for its protection, and private contracts intervene, they must yield to the right of the sovereign to exercise the police power. Manigault v. Springs, 199 U. S. 473, 26 S. Ct. 127, 50 L. Ed. 274; Stone v. Mississippi, 101 U. S. 814, 25 L. Ed. 1079. Without exercising the police power, the state may alter, enlarge, modify, or limit existing methods of procedure, or substitute or provide others without impairing contracts, if a sufficient one be left or provided. Memphis v. U. S., 97 U. S. 293, 24 L. Ed. 920; Vial v. Penniman, 103 U. S. 741, 26 L. Ed. 602. Parties to contracts have no right in the protection of remedies existing at the time of entering into the contract, and the state may at liberty change them if a substantial, efficacious remedy remains, or is given, by means of which a party to it may enforce his rights under the contract. Oshkosh Waterworks Co. v. Oshkosh, 187 U. S. 437, 23 S. Ct. 234, 47 L. Ed. 249. It cannot be doubted that the act of 1932 is protected by these principles from the charge of constitutional invalidity now preferred against it. The act of 1912 having required and provided the manner of giving notice to, and the method of trial at the instance of the depositors and other creditors, it was unnecessary to the validity of the act of 1932 to reproduce so much of the act of 1912 as provided for and required notice and method of trial.

This court in Dorman v. Dell, 245 Ky. 34, 52 S. W. (2d) 892, twice considered the constitutional validity of

the act of 1932; first, when the original opinion was delivered, and, second, on a petition for rehearing. We determined it was constitutional. Substantially the same argument and authorities were presented in that case as here. Again we have considered its constitutionality as a question of first impression, and it may now be regarded as no longer debatable.

The depositors who formulated and signed the plan of reorganization, after it was presented to and vetoed by the banking and securities commissioner, filed a petition in the circuit court of the county in which the Hardinsburg Bank & Trust Company was located and in which the proceeding was pending relating to the liquidation of the bank. The act of so filing their petition in the Breckinridge circuit court was authorized by and in conformity with section 165a-17. All depositors who had theretofore filed their claims against the bank were parties to the liquidation proceeding at the time of the filing of the petition of the agreeing depositors, and the nonconsenting depositors cannot complain of the absence of further or additional notice of the filing of the petition. Hughes v. Marvin, supra. The Breckinridge circuit court had exclusive jurisdiction of the parties and the subject-matter. Barr v. Dorman, 249 Ky. 367, — S. W. (2d) — , decided May 23, 1933. The statute authorizing the filing of the petition under section 165a-17 does not provide for, nor require, the issuance of process thereon, as required by the Civil Code of Practice in civil cases. Parties to such proceeding pending in court must at their peril take notice of the application of other parties thereto, in open court, for any relief to which they may conceive they are entitled. The objection of the nonconsenting depositors and the banking and securities commissioner to the proceedings of the court on the ground that process was not issued after the filing of the petition, and served on each of them, before the court proceeded to hear and determine the propriety of approving and directing the commissioner to approve the plan of reorganization and opening of the bank, is not available. The argument presented that the special demurrer was improperly overruled is equally without merit. The objecting depositors filed an answer to the petition and afterwards entered a motion to withdraw certain portions of it. It is also insisted that the action did not stand for trial at

the time of the rendition of the judgment. The basis of these contentions is that the rules of practice and procedure as prescribed by the Civil Code of Practice in civil actions should be adhered to by the parties and the court when the petition is filed as authorized by section 165a-17. The rules of practice and procedure prescribed by the Code should not be regarded as supplemental to, nor to supplant, the procedure authorized by section 165a-17. Simple, expeditious procedure is contemplated by this section for the benefit and protection of the depositors.

It is suggested that on March 9, 1933, by House Bill 1491 (see 50 USCA Appendix sec. 5a), the Congress expressly approved and ratified the proclamation of the President of the United States, suspending the operation of banks, both state and national, until their reopening was permitted by federal regulations, and that it was improper for the circuit court to approve and direct the banking and securites commissioner to consent to the reorganization and reopening of the bank and trust company until the federal regulations were first complied with. It should be reasonably anticipated that if, and when, the bank is reorganized it will comply with both state and federal regulations, and it was unnecessary for the order of court to contain the requirements. The evidence heard by the trial court is not a part of the record presented to us. In its absence the presumption is conclusive that it justified the judgment of the court. Hardin's Committee v. Shelman, 245 Ky. 508, 53 S. W. (2d) 923, and cases cited. The approval or disapproval of the plan of reorganization as it is set out in the judgment herein rested entirely in the sound discretion of the trial court exercised on the evidence as presented by the parties. By "sound discretion" we mean "discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 247, 75 L. Ed. 520. There is no showing that the decree herein is not the product of this type of discretion.

At the time of the voluntary liquidation of the bank and trust company its capital stock was $40,000 with deposits of approximately $467,029.65. At the time the reorganization plan was approved by the court, its

sound assets aggregated $336,606.87, exclusive of the voluntary assessment of 75 per cent. of the capital stock, amounting to $30,000.. When these amounts are added together, the reorganization plan brings the total assets to the sum of $366,606.87. It requires $30,000 for capital stock and $5,000 surplus, the latter takes care of the trust funds and the former is equivalent to fixing the double liability of the owners of the $40,000 of stock at $30,000 which continues as a protection and security to the depositors. The reorganization plan provides for the payment of the deposits in installments, 100 cents on the dollar, within the time therein specified. Having so provided a method of payment of the entire deposits at a stipulated rate of interest, it is thus shown the depositors are not deprived of either their rights or their property. Nor does it appear that the liquidating process in operation at the time of the enactment of the act of 1932 would produce such available assets within a shorter period of time in which to pay the depositors 100 cents on the dollar than that set out in the plan of reorganization. A provision in the judgment fixing the terms of the reorganization directs the payment of 10 per cent. of the deposits of $25 or more to the owners, and that the whole of the deposits of less amount than $25 shall be paid at the time the 10 per cent. is paid to the owners of the deposits in excess of $25. This provision of the reorganization plan is criticized by the nonconsenting depositors and the banking and securities commissioner, with the insistence that it is preferential and discriminatory. The number and amounts of the deposits less than $25 are not shown. In the absence of a showing to the contrary, it is presumed that the number of such depositors were few and the amounts trivial and insufficient in the aggregate to effect materially the payment of the owners of the deposits in excess of $25.

In the absence of an affirmative showing to the contrary, it is the duty of this court to accept the judgment of the chancellor, in this respect, as fully supported by the evidence.

Counsel for the banking and securities commissioner requests an allowance for his services. We observe that this claim was not presented to, refused or passed on by, the trial court. Without an order of the trial court disposing of the requested allowance, the

question may not be presented to this court for review. Counsel who makes the motion is not a party to the appeal. Without being a party, this court is deprived of the right to determine the question of his fee. Livingston County v. Dunn, 244 Ky. 460, 51 S. W. (2d) 450, and cases cited.

No error appearing in the record, and those pointed out in the brief being regarded insufficient to warrant a reversal, the judgment is affirmed.

Whole court sitting.